# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HOWARD F. WILLIAMS,
     Plaintiff,

  v.                                               Case No. 14-CV-0148

WILLIAM J. POLLARD,
ANTHONY MELI,
CAPTAIN RADTKE,
MS. HAUTAMAKI,
CAPTAIN O'DONOVAN,
FRANCIS PALIEKARA,
NEVIN WEBSTER,
CO SPITTEL,
CO BEASLEY,
EDWARD F. WALL, and
JOHN DOE,
     Defendants,

## DECISION AND ORDER

Plaintiff, Howard F. Williams, a state prisoner, filed a pro se complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before me on plaintiff's motion for leave to proceed in forma pauperis, plaintiff's motion of inquiry to correct docket entry #1, and for screening of plaintiff's complaint.

Plaintiff has been assessed and paid an initial partial filing fee of $7.42. I will grant his motion for leave to proceed in forma pauperis.

Plaintiff's complaint consists of the 23-page document docketed as the complaint and the 37-page attachment docketed as First Amendment Violations and Relief Requested. In addition to these two documents, plaintiff submitted 113 pages of exhibits in support of his complaint. Plaintiff also filed a motion of inquiry to correct the docket entry

at number one, which was docketed as a motion to amend/correct the complaint. Plaintiff was concerned, based on the docketing descriptions, that the court had not received his full, 60-page complaint. I will grant plaintiff's motion and consider the entire 60 pages to be plaintiff's complaint.

I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing

2

Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). I am obliged to give plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## I. COMPLAINT AVERMENTS

Plaintiff is a member of the Nation of Islam. In the 1990's, plaintiff was instrumental in establishing Nation of Islam as a recognized religion at Waupun Correctional Institution ("Waupun") and throughout the Wisconsin Department of Corrections ("DOC").

Plaintiff returned to Waupun in 2010. Since that time, plaintiff has been told that Nation of Islam is not an approved religious group. On March 4, 2013, defendant Pollard ordered a search of plaintiff's cell, and defendant Spittel confiscated two folders full of

3

approximately 400 pages of religious materials. Defendant Beasley wanted plaintiff to mail his religious materials out of the institution and tried to intimidate and bully plaintiff into doing so. Plaintiff refused, and defendant Radtke directed Beasley to write a conduct report for plaintiff having five pages of religious materials that refer to the Nation of Islam, the Fruits of Islam, and other subgroups of the Nation of Islam. Some of plaintiff's religious papers were seized and destroyed, including a letter from Louis Farrakhan, information regarding the Fruits of Islam and other subgroups of the Nation of Islam, and a copy of a memo from the Wisconsin Department of Corrections Security Chief to all wardens directing them to stop confiscating religious materials if the same materials are allowed inside the institution in other formats, such as books or newspapers.

Plaintiff received conduct reports for his possession of those religious documents and for attempting to copy the documents for use at his conduct hearings. Plaintiff details numerous concerns about the due process he received during his conduct report hearings.

Plaintiff submits that Chaplain Francis and Ms. Hautamaki lied to him from 2010 to 2013 and told him that Nation of Islam was not allowed at Waupun. The truth was forced to light during plaintiff's 2013 conduct report hearing.

Plaintiff further asserts that there is an unwritten policy that is used against plaintiff arbitrarily at the whims of the defendants to ban literature that mentions or references Fruit of Islam and other subgroups of the Nation of Islam. He avers that no other religious group is treated the same way.

## II. DISCUSSION

### A. First Amendment Free Exercise

To the extent plaintiff suggests that not being able to possess and use the seized documents interfered with his free exercise of his religion, he will be allowed to proceed on First Amendment free exercise claims against each of the defendants.

> Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Turner v. Safley, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); Tarpley v. Allen County, In., 312 F.3d 895, 898 (7th Cir.2002). Prison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest. See Turner, 482 U.S. at 89, 107 S.Ct. 2254. Legitimate penological interests include security and economic concerns. Al-Alamin v. Gramley, 926 F.2d 680, 686 (7th Cir.1991). When officials assert such a concern to justify the curtailment of an inmate's religious exercise, we must consider four factors in determining whether the challenged restriction is constitutional: (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns." Lindell v. Frank, 377 F.3d 655, 657 (7th Cir.2004) (citing Turner, 482 U.S. at 89-91, 107 S.Ct. 2254).

Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009)

### B. RLUIPA

To establish a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), a prisoner must show that a prison receiving federal funds has enacted a regulation that renders his exercise of a religious practice effectively impractical. See 42

5

U.S.C. § 2000cc-1; Koger v. Bryan, 523 F.3d 789, 796, 799 (7th Cir. 2008); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003). If the inmate succeeds, the burden shifts to prison officials to demonstrate that the regulation is the least restrictive means of furthering a compelling government interest. See 42 U.S.C. § 2000cc-1; Koger, 523 F.3d at 796. A prison has a compelling interest in maintaining security, see Borzych v. Frank, 439 F.3d 388, 391 (7th Cir. 2006); Rios v. Lane, 812 F.2d 1032, 1037 (7th Cir. 1987), and courts are particularly deferential to the judgment and expertise of prison administrators when analyzing whether a regulation is necessary to further that interest, see Cutter v. Wilkinson, 544 U.S. 709, 722-23 (2005); Koger, 523 F.3d at 800.

> Sovereign immunity shields state officials from monetary damages in their official capacity under RLUIPA. See Sossamon v. Texas, __ U.S. __, 131 S.Ct. 1651, 1658-59, 179 L.Ed.2d 700 (2011); see also Nelson v. Miller, 570 F.3d 868, 885-85 (7th Cir. 2009). We have also held that RLUIPA does not allow for suits against prison officials in their individual capacity. Nelson, 570 F.3d at 886-89.

Maddox v. Love, 655 F.3d 709, 717 (7th Cir. 2011). Plaintiff suggests that the actions taken against him were pursuant to an unofficial policy that disfavored Nation of Islam as a religion. He may proceed on RLUIPA claims against each of the defendants in his or her official capacity.

**C. Due Process**

Plaintiff sets forth several claims that fall under the umbrella of due process. His ability to proceed on any of these claims hinges on whether there was a protected liberty interest at stake. See Domka v. Portgage County, 523 F.3d 776, 779-80 (7th Cir. 2008); Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). "A prisoner has no liberty interest in remaining in the general population." Williams v. Ramos, 71 F.3d

6

1246, 1248 (7th Cir. 1995). A liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In Sandin, the Court held that a prisoner's sentence of thirty days of segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. In Thomas v. Ramos, 130 F.3d 754, 760-62 (7th Cir. 1998), the Seventh Circuit determined that a prison inmate's 70-day confinement in disciplinary segregation was not an "atypical and significant" deprivation of prisoner's liberty and thus did not implicate liberty interest protected under due process clause. And in Lekas v. Briley, 405 F.3d 602, 612 (7th Cir. 2005), the Seventh Circuit affirmed the dismissal of the plaintiff's due process claim under Rule 12(b)(6) even after he spent 90 days in disciplinary segregation. Lekas described the conditions in disciplinary segregation as:

> inability to participate in prison programs, inability to participate in educational programs, inability to participate in work programs and resulting loss of prison employment and wages, loss of contact visits, loss of telephone usage, inability or substantially curtailed ability to receive visits from family, inability to attend church, no visits from clergy, drastic reduction in exercise privileges and in commissary access both in terms of frequency and the types of items allowed, drastic reduction in the number and nature of personal items that prisoners are allowed to have in their possession, and no access or very little access to audio/visual items.

Id. at 610.

In Marion v. Columbia Correctional Institution, 559 F.3d 693 (7th Cir. 2009), the Seventh Circuit discussed the limited interest a prisoner has in avoiding disciplinary segregation and summarized its prior holdings on the issue. Although the plaintiff in Marion was sentenced to 240 days in segregation, the court "noted that six months of

7

segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." Id. at 698 (quoting Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995).

In the case before me, plaintiff was sentenced to 180 days of disciplinary separation. He has not provided information regarding the conditions of confinement in disciplinary separation in his complaint, but I will conclude for the purposes of screening that plaintiff had a protected liberty interest in remaining in the general population.

Plaintiff states a claim that the unwritten policy banning materials referencing the Nation of Islam and/or related groups violates his right to due process, where a liberty interest is implicated. "A deprivation of liberty without fair notice of the acts that would give rise to such a deprivation violates the due process clause." Toston v. Thurmer, 689 F.3d 828, 832 (7th Cir. 2012).

Although plaintiff describes this claim as both deliberate indifference and a due process violation, it is really a due process claim. Any deliberate indifference to plaintiff's right to free exercise of his religion is covered by his First Amendment free exercise claims.

Plaintiff also may proceed on a procedural due process claim against the defendants regarding a number of procedural problems with the hearings on his conduct reports (Nos. 2343557 and 2302222) and the resulting decisions.

Plaintiff alleges a number of violations of the Wisconsin Administrative Code and a memo telling all wardens to stop confiscating religious materials from inmates if they allow the same materials in the prison in other ways, such as books, magazines, newpapers, etc. These violations do not automatically constitute a claim, but they may be evidence of his claims.

To the extent plaintiff may be asking me to change the outcomes of his conduct reports, plaintiff's claims are barred. A plaintiff may not challenge the decisions regarding the conduct reports unless they have been vacated or overturned. When an issue in a prisoner case calls into question the judgment of a disciplinary decision, I may not address the issue until the decision of the disciplinary hearing has been reversed within the state system. Edwards v. Balisok, 520 U.S. 641, 646-47 (1997). The issue is not cognizable under §1983 until plaintiff has shown that the disciplinary decision has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. Dixon v. Chrans, 101 F.3d 1228, 1230 (7th Cir. 1996); Miller v. Indiana Dept. of Corrections, 75 F.3d 330, 331 (7th Cir. 1996).

**D. Retaliation**

Plaintiff suggests that his treatment with regard to his religious practice is retaliation for his earlier role in establishing the Nation of Islam as a religion at Waupun and throughout the DOC.

To state a retaliation claim, the "bare minimum" includes the facts that would apprise the defendants of what the plaintiff did to provoke the alleged retaliation and what they did in response. See Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002); Walker v. Thompson, 288 F.3d 1005, 1012 (7th Cir. 2002) ("a plaintiff alleging retaliation must reference, at a minimum, the suit or grievance spawning the retaliation and the acts constituting the retaliatory conduct"). Plaintiff has met this standard by asserting that each of the defendants has retaliated against him for bringing Nation of Islam to Waupun. In fact, plaintiff suggests that the retaliation goes all the way back to 1993.

9

However, § 1983 claims are subject to Wisconsin's six-year personal rights statute of limitations, Wis. Stat. § 893.53. Wudtke v. Davel, 128 F.3d 1057, 1061 (7th Cir. 1997); Gray v. Lacke, 885 F.2d 399, 409 (7th Cir. 1989). While the historical facts in plaintiff's complaint are informative for context, plaintiff may only proceed on claims that are not barred by the statute of limitations.

I know of no requirement limiting the time frame for the reason for the retaliation. According to plaintiff, his past history with the Nation of Islam is what caused these defendants to retaliate against him when he returned to Waupun in 2010. Accordingly, plaintiff may proceed on retaliation claims against defendants for their actions after plaintiff's return to Waupun.

**E. Equal Protection**

Plaintiff also suggests that he is being discriminated against because of his religious belief and that no other religion has been harassed, pressured, or punished in the Wisconsin Department of Corrections like the Nation of Islam and plaintiff in particular. "To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class". Brown v. Budz, 398 F.3d 904, 916 (7th Cir. 2005). Plaintiff may proceed on an equal protection claim that he has been treated differently as a member of the Nation of Islam than members of other religions at Waupun.

## F. Pollard and Wall

Generally, individuals involved in the inmate complaint process cannot be sued. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a complete act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007). However, plaintiff asserts that Pollard and Wall show a "casual indifference" to "rubber stamping" plaintiff's appeals and inmate complaints without a sincere investigation, review, or examination. (Complaint, Attachment 1, p. 13). These defendants can be responsible for their failure to properly investigate plaintiff's complaints, which is why I have allowed plaintiff to proceed against them in the claims above at this stage of the litigation. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009).

**THEREFORE, IT IS ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket #2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend/correct complaint (Docket #11) is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $342.58 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Green Bay Correctional Institution and Waupun Correctional Institution and, therefore, if plaintiff is no longer incarcerated at either institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 27th day of September, 2014.

s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge