UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HOWARD F. WILLIAMS,
        Plaintiff,

  v.                                               Case No. 14-CV-148

WILLIAM POLLARD, ANTHONY MELI,
CAPTAIN RADTKE, MS HAUTAMAKI,
CAPTAIN O'DONOVAN, FRANCIS PALIEKARA,
NEVIN WEBSTER, CO SPITTEL, CO BEASLEY,
EDWARD F. WALL, and UNKNOWN,
        Defendants.

---

## DECISION AND ORDER

The plaintiff, Howard F. Williams, is a prisoner proceeding *pro se* on claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and 42 U.S.C. § 1983 stemming from prison officials' confiscation of materials related to and general treatment of Fruit of Islam, a subgroup within the religious group Nation of Islam. He also proceeds on claims that prison officials retaliated against him in violation of the First Amendment because of his religion and his role in establishing Nation of Islam in Wisconsin's prisons. Before me now is defendants' motion for summary judgment.

### I. BACKGROUND

The facts are primarily taken from defendants' "Response to Plaintiff's Additional Proposed Findings of Fact" (ECF No. 91) and "Reply to Plaintiff's Response to Defendants' Proposed Findings of Fact" (ECF No. 92), supplemented, as necessary, by other materials in the record.

Plaintiff is a prisoner currently housed at New Lisbon Correctional Institution. At all times relevant to this case, plaintiff was housed at Waupun Correctional Institution

1

(Waupun). Defendants are Wisconsin Department of Corrections (DOC) employees, most of whom worked at Waupun during the relevant times.

Plaintiff is a member of the religious group Nation of Islam (NOI). He was involved in establishing NOI at Waupun and throughout DOC in the 1990s. Fruit of Islam (FOI) is the male-only paramilitary wing of NOI. FOI is organized in a military structure with military-style ranks, it provides security to NOI members, and its members adhere to a set of laws and rules not sanctioned by DOC. Plaintiff generally disputes this characterization of FOI, though documents from NOI, including those confiscated from plaintiff, support it.

Prison officials at Waupun and throughout DOC consider FOI to be a security threat group (STG). Broadly, STGs are groups that threaten, intimidate, coerce, or harass others or engage in activities that violate or encourage the violation of statutes, administrative rules, departmental policies, or institutional procedures. STGs like FOI undermine the authority of corrections officers and encourage violence. Many STGs are at least nominally associated with a religion or religious group.

Waupun previously had a zero-tolerance policy toward materials that mention STGs, but since 2006, materials that only incidentally mention an STG are allowed, while those that advocate for or promote an STG are prohibited. Prison officials review materials on a case-by-case basis to ascertain whether they are prohibited and, therefore, contraband.

On March 4, 2013, as part of a scheduled lockdown, during which corrections officials search prisoner cells and common areas for contraband, defendant Daniel Spittel, a Corrections Officer, searched plaintiff's cell. He found hundreds of pages of

materials about NOI and several documents about FOI. He was not sure which materials were allowed, so he seized all of the documents that he thought might be contraband and provided them to defendant Kelly Beasley, another Corrections Officer, for further review. Beasley reviewed the materials, consulted with other Waupun staff, and conducted research to determine whether any of the materials were prohibited. Defendant Cynthia Radtke, a Captain and STG Coordinator, also reviewed the materials. All of plaintiff's materials were returned to him except five pages that were deemed prohibited STG materials because they advocated for or promoted FOI. Two pages contain rules and laws that FOI members are required to follow, two pages contain questions and answers about NOI and FOI, and one page contains an NOI pledge card with instructions to report to FOI training. Plaintiff asked defendant Francis Paliekara, a Chaplain, for his help in getting his FOI materials back. Paliekara told plaintiff that NOI is allowed but FOI is not and that whether specific material is considered contraband depends on its content.

Beasley met with plaintiff about the five pages of confiscated FOI materials and told him that unless he sent the materials out of the prison or destroyed them he would receive a conduct report for possessing contraband. Plaintiff disagreed that the materials were contraband so refused. Beasley issued him a conduct report for violating DOC provisions of the Wisconsin Administrative Code covering "group resistance and petitions" and "possession of contraband." Defendant John O'Donovan, a Captain, was the hearing officer for plaintiff's disciplinary hearing. After taking evidence and considering testimony, O'Donovan found plaintiff guilty. Plaintiff appealed the decision to defendant William Pollard, the Warden, who affirmed the decision.

Later that month, plaintiff sent defendant Nevin Webster, a librarian, a request to make a photocopy of a memo from the DOC's Division of Adult Institutions Security Chief from 2006 concerning STG materials. Webster noticed that the memo was stamped "GP Library" in green, which indicated to him that the document was from the general population library at the Wisconsin Secure Program Facility (Boscobel). Webster believed that the document was an original that did not belong to plaintiff and that he had removed it from the library at Boscobel, so he issued plaintiff a conduct report for violating DOC provisions of the Wisconsin Administrative Code covering "theft" and "possession of contraband." O'Donovan was the hearing officer for plaintiff's disciplinary hearing. O'Donovan found plaintiff guilty of possessing contraband but not of theft because the evidence showed another inmate may have given the memo to plaintiff. Plaintiff appealed the decision to Pollard, who affirmed the decision.

During this time, plaintiff held a prison job in food service. Prison job placements at Waupun generally only last two years, and plaintiff's two years were up as of April 2013. Some inmates are granted extensions, but plaintiff was not. Soon thereafter, plaintiff requested a new placement in food service, which was denied. Defendants say this is because prisoners are not allowed to start a new equivalent job placement until two years after their previous placement ends. Additionally, prison officials take a prisoner's behavioral history and institutional adjustment into account when considering a prisoner's request for a job placement, and plaintiff had been issued multiple conduct reports. Plaintiff claims he was denied the job in retaliation for his religion. Plaintiff wrote a letter to Pollard to which defendant Anthony Meli, the Security Director, responded. Meli's response stated that plaintiff was denied the job due to his conduct report history.

4

Plaintiff timely filed and properly appealed three inmate complaints relevant to his claims in this case. Plaintiff complained that Radtke had taken and refuses to return his religious materials, that his religious materials are being wrongly denied, and that he was denied the food service job because of his religion. He brought this suit alleging numerous violations of his rights under the Constitution and RLUIPA. Broadly, he claims that NOI and FOI are indistinguishable groups so restrictions on FOI burden his ability to practice NOI and that prison officials at Waupun targeted him and singled out NOI for negative treatment.

## II. ANALYSIS

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purposes of deciding this motion, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483–84 (7th Cir. 2008).

### A. RLUIPA Claim

Plaintiff proceeds on a claim that defendants violated his rights under RLUIPA. Under RLUIPA, the government cannot impose a substantial burden on the religious exercise of a prisoner unless the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a)(1)–(2).

5

Defendants argue that plaintiff failed to exhaust his administrative remedies as to this claim. Prisoners cannot bring suit under federal law "until such administrative remedies as are available are exhausted." *Id.* § 1997e(a). DOC allows prisoners to request changes in or exceptions to its policies regarding religious practices and materials by submitting a DOC-2075 form. This process gives prison officials an opportunity to consider and respond to prisoner requests involving religion before the prisoner can turn to a federal court for relief. Plaintiff stated during his deposition that in bringing a RLUIPA claim he seeks a change to DOC's policy categorizing FOI as an STG such that he can keep and use FOI materials for religious reasons. He must, therefore, submit a DOC-2075 form requesting a change to DOC's policies regarding FOI. He has not done that, so he has failed to exhaust his administrative remedies as to this claim to the extent that he seeks a change in policy.

However, I also consider whether the evidence would allow plaintiff to proceed on a claim that defendants violated RLUIPA by denying him his confiscated FOI materials. Under RLUIPA, the plaintiff must first show that government action "imposed a substantial burden on his ability to exercise his religion." *Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009) (first citing *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); and then citing *Hammons v. Saffle*, 348 F.3d 1250, 1258–59 (10th Cir. 2003)). The state must then show that its action "is the least restrictive means of furthering a compelling governmental interest." *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008) (quoting *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006)).

To show that the government imposed a substantial burden on his ability to exercise his religion, a plaintiff need only show that the government action "seriously

6

violates" his religious beliefs. *Holt v. Hobbs*, --- U.S. ---, 135 S. Ct. 853, 862 (2015) (quoting *Burwell v. Hobby Lobby Stores*, --- U.S. ---, 134 S. Ct. 2751, 2775 (2014)). Plaintiff testified in his deposition that two of the five pages that defendants confiscated contain laws and rules that he is required to follow as a member of NOI, that he does not have them all memorized, and that he needs a copy of them to refresh his memory over time. At the least, denying him a copy of these religious laws and rules denies him the ability to fully exercise his religious beliefs, thereby seriously violating them.

To show that the burden is the least restrictive means of furthering a compelling governmental interest, the state must show "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion" of the plaintiff. *Id.* at 864 (quoting *Hobby Lobby*, --- U.S. at ---, 134 S. Ct. at 2780). But, RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). It must be "applied in an appropriately balanced way, with particular sensitivity to security concerns." *Id.* I must respect the expertise of "[p]rison officials . . . in running prisons and evaluating the likely effects of altering prison rules" while not resorting to "unquestioning deference" to those officials. *Holt*, --- U.S. at ---, 135 S. Ct. at 864.

Defendants have established that prohibiting materials that advocate for or promote an STG furthers a compelling governmental interest in preserving safety and security in Wisconsin's prisons. Prison officials consider FOI to be an STG because its military structure presents a challenge to the authority of correctional officers, its emphasis on defense of NOI members suggests that prison officials cannot keep prisoners safe and that FOI may be justified in violently defending NOI members or in

7

retaliating for harm against them, it has violent undertones, and it requires adherence to laws and rules not sanctioned by DOC. Further, prison officials believe they can distinguish between NOI and FOI, allowing inmates to practice NOI while prohibiting materials that present a security threat by advocating for FOI. The materials that defendants confiscated from plaintiff specifically advocate for FOI and raise exactly the concerns that defendants have noted about FOI. Plaintiff was allowed to keep his NOI materials.

Plaintiff argues that there are less restrictive means of restricting problematic FOI content, such as redaction or allowing him to use the materials only inside his cell. Redaction would not alter the materials' underlying advocacy for a group that, by its nature, presents a security threat. Allowing plaintiff access to these materials in his cell would allow him to spread the ideas they contain outside of his cell, so this is not a means by which Waupun could achieve its desired goal. Prison officials review materials on a case-by-case basis to determine whether they advocate for or promote an STG. Multiple officials reviewed plaintiff's materials and agreed to confiscate five pages out of the hundreds that were initially seized from plaintiff's cell. It is hard to imagine (and plaintiff has not provided) a less restrictive means of furthering the compelling state interest in this case, especially given the "particular sensitivity" owed to security concerns. Therefore, defendants are entitled to summary judgment on plaintiff's claims under RLUIPA.

**B. First Amendment Free Exercise Claim**

Plaintiff proceeds on a claim that defendants interfered with the free exercise of his religion in violation of the First Amendment by denying him his confiscated FOI

materials. "Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered." *Ortiz*, 561 F.3d at 669 (first citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–49 (1987); then citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987); and then citing *Tarpley v. Allen County*, 312 F.3d 895, 898 (7th Cir. 2002)). Under the First Amendment, "[p]rison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest." *Id.* (citing *Turner*, 482 U.S. at 89). In determining whether such a restriction is constitutional, I consider four factors:

> (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Id.* (quoting *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)).

These factors weigh in defendants' favor. First, the restriction on FOI materials is clearly related to a legitimate and neutral governmental objective. As discussed above, defendants have provided many legitimate reasons why they consider FOI to be an STG and why they restrict materials advocating for such groups. Second, there are alternative means available to plaintiff to exercise his religious rights. He retains voluminous materials about NOI and has most of its laws memorized. He could also seek further religious accommodations using the DOC-2075 procedure described above. Third, allowing plaintiff to have FOI materials would negatively impact guards and other inmates by presenting the very security concerns that led defendants to consider FOI to be an STG in the first place. Finally, there are not obvious alternatives demonstrating that the restriction on FOI materials is an exaggerated response to

9

penological concerns. As discussed above, defendants have shown that their actions are the least restrictive means of furthering the legitimate and neutral governmental objective at issue. Based on an examination of these four factors, defendants are entitled to summary judgment as to plaintiff's free exercise claim.

**C. Equal Protection Claim**

Next, plaintiff proceeds on a claim that defendants' actions violated his right to equal protection under the Fourteenth Amendment. Plaintiff claims that every time an officer searched his cell some of his materials were sent for security review and members of other religions did not receive the same scrutiny.

Normally, when an equal protection claim is based on interference with a fundamental right, such as the right to the free exercise of religion, I must apply heightened scrutiny in reviewing the challenged government action. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006) (citing *Eby–Brown Co. v. Wis. Dep't of Agric.*, 295 F.3d 749, 754 (7th Cir. 2002)). However, "[w]here a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (quoting *Wirzburger v. Galvin*, 412 F.3d 271, 282–83 (1st Cir. 2005)).

Plaintiff's free exercise claim has failed, so I apply rational basis review, which requires plaintiff to show that "the difference in treatment was not rationally related to a legitimate state interest." *Smith v. City of Chicago*, 457 F.3d 643, 651 (7th Cir. 2006). Plaintiff cannot do that. As discussed above, defendants have shown that their

treatment of FOI is rationally related to a legitimate state interest. Therefore, defendants are entitled to summary judgment on plaintiff's equal protection claim.

**D. First Amendment Retaliation Claim**

Finally, plaintiff proceeds on claims that various prison officials retaliated against him in violation of the First Amendment. He claims that defendants issued conduct reports against him and denied his request for a food service job because of his religion and his role in establishing NOI at Waupun and throughout DOC in the 1990s.

Summary judgment decisions on retaliation claims "involve a burden-shifting framework." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). "In the *prima facie* case, the plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Id.* (citations omitted). To prove causation, "a 'plaintiff need only show that a violation of his First Amendment rights was a "motivating factor" of the harm he's complaining of'; once he shows that 'the burden shifts to the defendant to show that the harm would have occurred anyway.'" *Thayer v. Chiczewski*, 705 F.3d 237, 251–52 (7th Cir. 2012) (quoting *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011)). Once the defendant has done that, "the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Id.* at 252 (citing *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011)).

Plaintiff's general religious exercise and his involvement in establishing NOI at Waupun and throughout the DOC in the 1990s are certainly activities protected by the First Amendment. Likewise, conduct reports and the denial of a job placement request

11

are deprivations likely to deter First Amendment activity. However, plaintiff presents only conclusory allegations that his protected activities were a motivating factor for these deprivations. Specifically, his claim that defendants retaliated against him because of his role in establishing NOI is unsupported. Defendants, in sworn declarations, say that most of them did not know about plaintiff's role in establishing NOI until this litigation began, and plaintiff presents nothing to the contrary apart from suspicion and speculation. Further, more than fifteen years passed between plaintiff's activities in the 1990s and the alleged retaliatory actions, which weighs against any possible inference of a connection between the two. However, plaintiff's general religious exercise and the allegedly retaliatory actions at issue may be connected.

Even assuming plaintiff can establish a *prima facie* case, a reasonable jury could not conclude that defendants' proffered reasons for their actions were a pretext for retaliation. Defendants present evidence that plaintiff received his first conduct report for possessing contraband and refusing to send it out of the prison or destroy it; plaintiff received his second conduct report for attempting to copy a document that did not belong to him and was an original taken from the library of another DOC institution; and plaintiff was denied his request for a food service job because there is a two-year limitation on prison job placements and his conduct reports weighed against the granting of his request. Plaintiff argues that defendants targeted him because of his religion but offers nothing more than suspicion and speculation as to their motives. Simply put, plaintiff offers nothing that would allow a jury to conclude that defendants' proffered reasons were a pretext for retaliation. Therefore, defendants are entitled to summary judgment on plaintiff's retaliation claims.

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 57) is **GRANTED**, this case is **DISMISSED**, and the Clerk of Court shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment, and any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend these deadlines. Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

13

Case 2:14-cv-00148-LA   Filed 09/29/16   Page 13 of 13   Document 100